UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 12-20767-CIV-MORENO

WENDY JOHANA CLAVIJO URZOLA,

    Plaintiff,

vs.

THUMBELINA LEARNING CENTER CORP.,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment and Memorandum of Law in Support Thereof **(D.E. No. 13)**, filed on **July 17, 2012**. Plaintiff Wendy Johana Clavijo Urzola brought suit against Defendant Thumbelina Learning Center Corp. for violations of the Fair Labor Standards Act ("FLSA"). In response, Thumbelina filed this motion for summary judgment challenging Clavijo's overtime compensation and retaliation claims under the Act. Because Clavijo has failed to offer adequate evidence supporting her claims to create a genuine issue of material fact, this Court grants Thumbelina's motion for summary judgment.

### I. FACTUAL BACKGROUND

Plaintiff Clavijo was employed as a teacher by Defendant Thumbelina Learning Center from April to mid-October 2011. She alleges that from September 9 to the date of her termination on October 14, Thumbelina denied her proper overtime and "straight time"

compensation for workweeks longer than forty hours in violation of § 207(a)(1) of the FLSA.[1] *See* Pl.'s Aff. ¶¶ 10, 13; Pl.'s Dep. at 43:7–23; Pl.'s Statement of Undisputed Material Facts ¶¶ 12, 14. In particular, she states that, beginning in early September, Thumbelina instructed her to work each day from 9:00 A.M. to 6:00 P.M. without taking a break. *See* Pl.'s Aff. ¶ 6; Pl.'s Statement of Undisputed Material Facts ¶ 6. However, Clavijo maintains that Thumbelina only paid her for eight of the nine hours she worked during the period in question, requiring Clavijo to record a break on her time sheet even though she never took one. *See id.* Pl.'s Aff. ¶¶ 6, 13.; Pl.'s Statement of Undisputed Material Facts ¶¶ 4–6.

In addition to her request for overtime compensation, Clavijo alleges that Thumbelina terminated her employment in retaliation for her complaints about pay discrepancies, thereby violating § 215(a)(3) of the FLSA. Specifically, Clavijo states that during her employment she consistently reported these discrepancies to the assistant principal, Clara Vale. In response to these complaints, she claims that Vale told her at one point to be quiet and "stay with the job." Pl.'s Statement of Undisputed Material Facts ¶ 19. Clavijo also states that she went to the principal, Lilah Ross, on one occasion and attempted to report her objections, but was told to speak with Vale instead. *See* Pl.'s Aff. ¶ 18; Pl.'s Statement of Undisputed Material Facts ¶ 26.

On October 14, Clavijo became involved in a physical altercation with a co-worker in front of students and parents. That same day, Ross fired Clavijo and the co-worker. Clavijo now alleges that Ross's decision to terminate her was due to her past complaints about payment.

---

[1] Thumbelina correctly notes that the FLSA does not provide a statutory remedy for "straight time" hours that exceed the minimum wage. Rather, the FLSA only permits damages for violations of the minimum wage and overtime provisions in § 206 and § 207 respectively. *See* 29 U.S.C. § 216(b) (2012). Clavijo did not object to this point in her response to Thumbelina's motion for summary judgment.

Thumbelina filed this motion for summary judgment, arguing that both of Clavijo's FLSA claims are baseless. Regarding Clavijo's first claim for overtime compensation, Thumbelina offers Clavijo's time sheets for the period in question. For example, during the workweek of September 9 through September 15, the time sheet states that Clavijo only worked 34.5 hours with a one-hour break taken each day. *See* Def.'s Ex. 6. Thus, even if the one-hour break is compensated for each of the five days worked, Clavijo still remains short of the forty-hour statutory minimum to qualify for FLSA overtime compensation for that week. Using the same calculation for all of the following workweeks through October 14, Thumbelina notes that Clavijo's hours in fact never overcome the FLSA forty-hour threshold. *See* Def.'s Exs. 6–8.

Additionally, Thumbelina argues that there is insufficient evidence to maintain Clavijo's retaliation claim. It contends that Clavijo has failed to offer any proof that Vale communicated Clavijo's complaints to Ross, who alone made the decision to terminate Clavijo. Nor, Thumbelina alleges, has Clavijo offered any facts to indicate that Ross used her decision to terminate Clavijo as a retaliation for these complaints. Instead, Thumbelina asserts that Ross had a legitimate rationale for firing Clavijo, namely the October 14 altercation

## II. LEGAL STANDARD

A court shall grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Consequently, the movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *See Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986). In evaluating whether the movant has met this burden, a court must view all the evidence in the light most favorable to the non-moving party. *See Dent v. Giaimo*, 606 F. Supp. 2d 1357, 1359 (S.D. Fla. 2009) (citing *Sweat v. Miller Brewing Co.*, 708 F.2d 655, 656 (11th Cir. 1983)). This means that a court "must construe all facts and draw all reasonable inferences in favor of the non-moving party." *Id.*

Once the movant has met its burden under Rule 56, the burden of production shifts and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Indeed, "mere conclusory, uncorroborated allegations by a [non-moving party] in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment." *Dent*, 606 F. Supp. 2d at 1359. Rather, the non-moving party must come forward with "specific facts showing a genuine issue for trial" or the court will grant summary judgment. *See Lopez v. Ans*, No. 09-60734-CIV-COHN/SELTZER, 2010 U.S. Dist. LEXIS 7543, at *9 (S.D. Fla. Jan. 29, 2010) (quoting *Matsushita*, 475 U.S. at 587).

### III. DISCUSSION

*A. Clavijo's Claim for Overtime Compensation*

In response to Thumbelina's motion for summary judgment, Clavijo challenges the authenticity of the time sheets that Thumbelina has offered in evidence. She maintains that she witnessed Assistant Principal Vale cut out copies of employee signatures, copy them, and insert them on other time sheets. *See* Pl.'s Aff. ¶ 8. Additionally, she notes that the "In and Out" portion of her time sheets dating from August 12 to September 22, as well as the "Grand Total

Hours" block on her October 7 to October 14 time sheet, are not in her handwriting. *See* Pl.'s Statement of Undisputed Material Facts ¶¶ 8, 13, 17. Clavijo argues that these alterations automatically call into question the authenticity of all of the time sheets. For this reason, the precise number of hours at issue remains a material fact in dispute.

Thumbelina in turn asserts that Clavijo's affidavit raising the authenticity arguments contains statements that are squarely contradicted by her deposition and therefore constitutes a "sham affidavit." Thumbelina highlights specific areas of the deposition where Clavijo affirmed the accuracy of certain time sheets and stated that she had not been working for longer than forty hours a week. Consequently, Thumbelina requests that the Court strike those portions of Clavijo's affidavit that are undeniably inconsistent with her prior deposition.

The Eleventh Circuit has acknowledged that "a genuine issue [for purposes of summary judgment] can exist by virtue of a party's affidavit, even if it conflicts with his deposition." *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 738 F.2d 656, 658 (11th Cir. 1984). However, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Id.* at 657. As a result, a court "may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony." *Pennant v. Convergys Corp.*, 368 F. Supp. 2d 1307, 1312 (S.D. Fla. 2005) (quoting *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003)). Yet, "[t]his rule is applied 'sparingly because of the harsh effect [it] may have on a party's case.'" *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1316 (11th Cir. 2007) (quoting *Rollins v.*

*TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987)). A court will only disregard an affidavit if it finds "some inherent inconsistency" between the affidavit and the deposition. *Id.* (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir. 1987)).

In this case, Clavijo has provided, without explanation, statements in her affidavit that are inherently inconsistent with portions of her deposition. To begin with, Clavijo stated in her deposition that she is only seeking compensation for the lunch-time hours that she was required to work through. Pl.'s Dep. at 95:13–17. She affirmed that Thumbelina first started requiring her to work through her lunch break in early September and continued to do so until she was terminated on October 14. *See id.* at 24:25 to 26:1–4. More precisely, Clavijo stated that she was paid properly through September 8. *See id.* at 43:7–23. This confirms that the period in question is September 9 to October 14.

During this period, Clavijo admitted in her deposition that she also attended Miami-Dade Community College at night, attending class from 6:00 P.M. to 10:00 P.M. every weekday. *Id.* at 8:19–25, 9:21–22. As a result, she had to leave Thumbelina each day at 5:00 P.M. to get to class. *Id.* at 9:2–3. At first this was not an issue as her original hours at Thumbelina were 8:00 A.M. to 5:00 P.M. *Id.* at 8:24–25. However, as Clavijo noted in her deposition, Thumbelina changed her hours to 9:00 A.M. to 6:00 P.M. at the onset of the new school year in August. *Id.* at 19:20–25 to 20:1. To deal with this conflict, Clavijo stated in her deposition that she continued to leave at 5:00 P.M. for the period between September 9 and September 22:

Q. Did you work 9:00 to 5:00 from September 9th to September 22nd?

A. I don't recall. I know I changed my times. I was still coming in at 9:00 but I spoke to—I don't remember who I spoke to but I said I couldn't stay until 6:00 and so I was leaving at 5:00

again, but coming in at 9:00.

*Id.* at 45:23–25 to 46:1–4. Consequently, at least for the period between September 9 and September 22, Clavijo could only have been working, at maximum, eight-hour days. Her deposition thus flatly contradicts her current affidavit where it alleges that she was working over forty hours a week. *See* Pl.'s Aff. ¶ 10.

The same can be established for the rest of the period at issue through the date of her termination on October 14. Clavijo recognized in her deposition that the time sheet for the period of September 23 to October 6 accurately reflects her hours during those weeks:

Q. Ms. Clavijo, take a look at Exhibit 7 which appears to be a time sheet for September 23, 2011 to October 6, 2011. Does that look familiar to you?

A. That's my handwriting. I filled this out.

Q. And that's your signature there?

A. That's correct.

Q. Does this time sheet accurately reflect the hours that you worked between September 23, 2011 and October 6, 2011?

A. Yes.

Pl.'s Dep. at 47:6–16. That time sheet notes that Clavijo worked a total of twenty-three hours the first week and thirty-five hours the second, with one-hour breaks taken most days. *See* Def.'s Ex. 7. Thus, even if the one-hour breaks are accounted for, that still leaves Clavijo well short of the forty-hour mark for each week. *See id.*

Likewise, Clavijo conceded in the deposition that she filled in everything for the final time sheet covering October 7 through October 14 except for the "Grand Total Hours" block.

*See* Pl.'s Dep. at 50:5–24. She also stated that she had reviewed the time sheet before she had signed it to attest that she had worked thirty-five hours the first week and approximately three hours the next. *Id.* at 50:25 to 51:1–2. Again, even accounting for the one-hour breaks marked on the sheet, Clavijo still failed to exceed forty hours during those two workweeks. *See* Def.'s Ex. 8.

In light of this deposition testimony that stands in direct contradiction to Clavijo's affidavit, the Court strikes the portion of the affidavit that contains the unsubstantiated assertion that she worked for longer than forty hours a week during the period in question. Consequently, there is no genuine issue of material fact as to Clavijo's failure to work enough hours to qualify for FLSA overtime coverage. *See* 29 U.S.C. § 207(a)(1) (2012).

Moreover, her allegations that Thumbelina altered her time sheets do not undermine the evidence that Thumbelina has presented. Clavijo has acknowledged that she worked from 9:00 A.M. to 5:00 P.M. from September 9 to September 22, that her time sheets from September 23 to October 6 are accurate, and that she signed and filled in the hours for her time sheets from October 7 to October 14. In addition, Clavijo has never explicitly alleged that Thumbelina or its employees ever altered, or required Clavijo to misrepresent, in and out times. She claims only that Thumbelina compelled her to record lunch breaks that were never taken. *See* Pl.'s Statement of Undisputed Material Facts ¶¶ 4, 11, 14, 16, 28. But even when these lunch hours are incorporated, Clavijo still falls short of the mark. With this in mind, the Court cannot accept her conclusion that evidence of alterations to some time sheets necessarily marks all of the time sheets as entirely suspect. As a result, the Court grants Thumbelina's motion for summary judgment as to Clavijo's claim for overtime compensation.

## B. *Clavijo's Retaliation Claim*

Clavijo also maintains that she was terminated for her persistent complaints about pay discrepancies. Though she admits that most of her complaints were directed to Vale, Clavijo argues that it is entirely reasonable to assume that Vale would have communicated these complaints to Ross. Furthermore, she contends that her attempt to voice her grievances to Ross directly was sufficient to put Ross on notice.

Section 215(a)(3) of the FLSA makes it unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . under or related to this chapter." 29 U.S.C. § 215(a)(3). To analyze FLSA retaliation claims, courts use "the familiar *McDonnell Douglas* framework applied to retaliation claims under Title VII, the ADEA and the ADA." *Suchite v. Kleppin*, 819 F. Supp. 2d 1284, 1293 (S.D. Fla. 2011) (quoting *Burnette v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1133 (N.D. Ga. 2004)). Under this framework, plaintiffs alleging retaliation must demonstrate three elements: "(1) that they engaged in protected activity under the FLSA; (2) that they subsequently suffered an adverse action by their employer; and (3) that a causal connection existed between the employees' activity and the adverse action." *Id.*

To establish a causal connection, "a plaintiff need only show 'that the protected activity and the adverse action were not wholly unrelated.'" *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (quoting *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999)). A plaintiff may show that an adverse action was related to a protected activity by offering circumstantial evidence that the decision-maker was aware of the protected conduct at the time of the adverse employment decision. *See id.* However, "[d]iscrimination is about

actual knowledge and real intent, not constructive knowledge and assumed intent." *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1274 (11th Cir. 2002). "When evaluating a charge of employment discrimination, then, [a court] must focus on the actual knowledge and actions of the decision-maker." *Id.*

In this case, Clavijo has failed to rebut Thumbelina's demonstration that no genuine issue of material fact exists regarding her retaliation claim. Quite simply, Clavijo has not offered any substantive evidence of Ross's actual knowledge of Clavijo's complaints. Her assertions that Vale communicated these complaints to Ross remain speculative at best. Additionally, Clavijo can only point to one occasion where she tried to voice her objections to Ross, but instead was told to speak to Vale.

As a result, Clavijo's claims that her complaints served as Ross's motivation in terminating her are just as dubious. In fact, the circumstantial evidence seems to say otherwise as Ross fired Clavijo and a co-worker on the same day that the two became involved in an altercation with each other. In sum, Clavijo has not demonstrated specific facts of a causal connection between the voicing of her complaints and her termination. Therefore, no genuine dispute as to any material fact exists and Thumbelina is entitled to judgment as a matter of law on Clavijo's retaliation claim.

## IV. CONCLUSION

For the above reasons, it is

**ADJUDGED** that Defendant's Motion for Summary Judgment is GRANTED.

DONE AND ORDERED in Chambers at Miami, Florida, this 27th day of August, 2012.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:

Counsel of Record